Marsha Pillich
Po box 36,
Amherst, NY 14226

May 6 2014

Honorable Judge Bucki
U S Bankruptcy Court, Buffalo, NY 14203

Re: Marsha Pillich robbed of her possessions, removed from their homes via Eviction and other means

Dear Judge Bucki : Please consider this Judicial Notice per my Pro Se answer to Sovran

Please also know that Sovran Self Storage Inc. is a publicly traded NYSE firm.(see exhibit) It is listed in the Judgment and the motion incorrectly as Sovran Self Storage Inc. DBA Uncle Bob's. Sovran Acquisition Limited Partnership is a completely different company with different management, ownership and interests. Phillips Lytle has five conflicts today as I read their filing:

1. Phillips Lytle can not serve a publicly traded company and a privately held business with different agendas. It can not serve two different businesses as a non creditor in Bankruptcy court. It is illegal under the Code. They have different ownership. In order to make a claim they must show a proper legal interest in our personal property which they cannot. They have stolen and seized our property.

2. Phillips Lytle is a suspect in the two violations of Stay claims we are bringing against the law firm, Sovran Self Storage Inc, and Uncle Bobs and Sovran Acquisition LP for attempts to steal our property while the Stay was in place and they had been notified legally to stop selling our personal property.

3. Phillips Lytle employs the son of this sitting Judge and should not bring matters to his attention for that very reason. It is an obvious conflict of interest.

4. Phillips Lytle filed fatally defective motion citing incorrect names of the party bringing the motion and a fatally defective Judgment citing the plaintiff as Sovran Self Storage Inc dba Uncle Bob's Self Storage. You can not have the same two DBAs for two different businesses in New York State as Sovran does

5. Phillips Lytle filed the time and place incorrectly as April 21st 2014 at 11:30PM and has not corrected the matter nor served all parties properly or timely.

6. Phillips Lytle in their notice of motion and their Amended Notice of Motion dated April 11, 2014 to dismiss the case fatally listed their client as Sovran Self-Storage, Inc d/b/a Uncle Bob's Self Storage. There is no such thing and they forgot to state they represent Sovran Acquisition LP dba Uncle Bob's Self Storage. There are many different entities which are not in good standing in New York and Phillips Lytle made many defective representations. Their motions should be dismissed.

7. Regarding Jurisdiction and Venue claim of Sovran, Pillich has the right to conduct two violation of Stay hearings against Sovran and asks the court for guidance on how to do that.

8. Regarding prior Bankruptcy, your Honor and I discussed the timelieness of filing our papers one day late and found that not to be willful in March.

9. Regarding Sovran's Motions for Relief, at no time was Pillich represented by Counsel although I paid for one. I filed my papers in good faith but, was found to be a day or two late by the Trustee. I did not make any willful failures to abide by the court. Sec. 109 (g) (1) does not apply to this matter. I had the right to refile.

10. Regarding Sovran's use of Sec. 1307(c), THIS DEBTOR DID NOT FILE IN BAD FAITH. We have asked for an inspection and inventory of what was stolen from our home. We have only identified four creditors: Ocwen, National Grid, WNY and Sovran. Sovran is an unlawful Creditor who has held our property hostage and denied us access to it and their insurance policies so we can file claims against them and WNY. There are six insurance policies, one for each rental unit, paid for by our $9044 payments under duress to keep our property from being sold at secret auctions. Sovran has NOT filed its proof of claim for any amount yet. It should have done so had it had a legitimate claim against us.

11. Sovran has not demonstrated it filed any lien anywhere. Nothing has been filed in Clerks office anywhere. Sovran Self Storage Inc, the moving party has no right to make a lien claim since it does not own the real estate used for storage. Sovran needs to be denied its claims for not having any lien paperwork.

12. No dismissal is warranted because all of our filings with Bankruptcy Court Clerk and Trustee have been timely per conversations with many parties there.

13. There can be no allegation asking for Adequate Protection because Sovran is an unlawful Creditor who has not issued a bill to us nor PROOF OF CLAIM NOR have they shown us what they collected on their Judgment against WNY for $12,000. Plus, we paid for $12,000 in additional insurance that Sovran has taken for themselves from the BADER renters insurance policies that were promised to us by Sovran. In addition, Sovran took out another Travelers Insurance policy per their filing to cover any errors and omissions by WNY. In addition, Sovran at two recent Auctions allowed their employees and agents to rummage through our storage units twice in the past four months in an attempt to violate the Stay. The Tonwanda Police on both occasions ORDERED them to Stop the AUCTION of our property. They will be witnesses to the Violation of Stay. The fines incurred for Violating the Stay will be further proof of their Unlawful Actions to Steal our property. THERE IS NO BAD FAITH DEALING BY PILLICH, ONLY BY SOVRAN.

14. Regarding Sovran being unable to re-rent their storage units, Sovran has collected $9044 from us under Duress, $3000 or more from WNY, $12,000 for a Judgment against a Million Dollar WNY Errors and Omissions Policy and upon information and belief, a special WNY Fidelity Bond WNY had to post to get hired to move furnishings in Evictions in NY. Further Sovran has an Indemnity Agreement and Policy to pay for any costs or expenses by WNY for storing Eviction Victims property. The only goal left is to maintain the Stay and secure an inspection, an Inventory and allow the Insurance Adjusters to assess the Damages. Sovran refuses to allow this because their employees have been stealing our property and WNY has taken some property as well when they moved all of our belongings to their warehouse on 349 Ontario Street for several days before Sovran allowed them to store the property at their Facility at 1275 Sheridan Drive, Tonawanda.

15. Regarding Injunctive Relief, Section 105 of the Bankruptcy Code is not relevant to the Pillich personal property. The filing prior and today have been made in good faith to secure an Inspection and Inventory and Insurance adjuster assessment to make claims against WNY and Sovran and Stay violation hearing.

16. Regarding No Prior Motion, Sovran is wrong. Sovran filed a Motion to lift the Stay in Erie County Supreme Court last year in which they filed a defective motion by Sovran Self Storage Inc, and not the Realty LP that owns the real estate. Sovran has unclean hands and has made many defective allegations. In the Notice dated April 11, 2014, attorney Joshua P. Fleury defectively signed two parties name to the Motion but, upon information and belief, the signature of Angela Miller is fraudulent since she was on vacation when this Motion was authored and signed. So it is a defective motion.

WHEREFORE, This DEBTOR pro SE respectfully requests that the Court Deny both Motions as DEFECTIVE and Dismiss these Motions with prejudice and Deny any injunctive Relief as well as any Claims by the Unlawful Creditor Sovran Self Storage Inc or an unknown Sovran Acquisition LP or their unlawful dba Uncle Bob's Storage due to many STATED CONFLICTS of Interest by their lawfirm Phillips Lytle.

Sworn to this day, I set my seal below under penalty of perjury,

_____
Debtor Marsha M Pillich

Pillich Request for a Stay Violation Hearing, Inspection, & Claims Adjusters Visits and Mis billing Hearing to confirm Sovran has been overpaid on their Storage units.

As you are aware foreclosure is a constant and growing problem in the State of New York and our land.. While a great deal of actions on the part of the State and other Local and Federal entities are taken for activities and actions taken before, during and soon after foreclosure. Unfortunately the ruthless behavior of foreclosing parties, their subsidiaries, and agents doesn't end there. The eviction process seems simple. But for a growing number of citizens the eviction process is just as harmful as the foreclosure itself, adding insult to injury, and causing the loss of rights, possessions, family heirlooms and memories.

I have read the NY Lien Law Section 182 concerning possessions in Self Storage Units. It is this law and the loss of our rights through this law which I am addressing today. My goal is to convince you that Bankruptcy Court should be a place to correct these loss of rights.

NY Lien Lien Law Section 182 defines "Occupant" as the person entitled to the use of of the storage space. As "Occupant" they are also the signer of the Occupancy Agreement and entitled to certain protections under the Lien Law. When an eviction occurs and the possessions are placed into a Self Storage Unit an agreement is signed. Unfortunately for the homeowner, even though the possessions being placed into the unit are theirs, they are not the signer of that agreement and at a distinct disadvantage and at greater risk of losing what little they have.

NY Lien Law, Section 182 (1)(b) states that if the "Owner" of the Self Storage unit "issues any warehouse receipt, bill of lading or other document of title for the personal property stored, the owner and occupant are subject to the provisions of the UCC" and provisions of the NY Lien Law Section 182 do not apply. As the homeowner is not considered the "occupant" as stated above, their disadvantage is doubled. They have no idea as to whether the NY Lien Law applies, or if because of the exception stated above, UCC provisions apply. Either way they appear to have no right or "legal interest" to the property, yet to get their possessions back, they have to pay whoever, whatever they state is due. WE ARE NOT ALLOWED ACCESS TO OUR UNITS.

If the UCC provision does NOT apply there are even greater harms and hurdles for the homeowner:

The homeowner is uninformed as to the "Required Disclosures" signed by the Occupant and the possible protections afforded them by NY Lien Law Section 182 (2). Most particularly the "Required Notice" concerning the monthly occupancy

charges, and other charges the Owner may apply:

   NY Lien Law Section 182 (3) "Unlawful Detention". As the homeowner is not a signer to the agreement, they do not have right to acquire the property even upon payment without a release by the "Occupant".

   NY Lien Law Section 182 (4) "Private Right of Action", once again as a non-occupant they have no signed agreement and are left unprotected for a Private Right of Action.

   NY Lien Law Section 182 (6) "Lien". As a non-occupant, no protection is offered to the homeowner when it comes to the possible auction of their possessions. I have included the "billing" that I have personally paid for my personal possessions being held in Uncle Bob's Self Storage facility to demonstrate the reference and use of this term by this particular facility, but is not unique to Uncle Bob's Self Storage. You will note the monthly charge of $115.00 per month for "lien". There is no explanation given as to the significance or definition of this term.

  Within the NY Lien Law the terms are conditions are very clear. "Notice" shall "include an itemized statement of te amount due, the description of the property subject to the lien, nature of the proposed sale, and demand for payment within a specified time not less than 10 days from receipt of notice", conspicuous statement that "unless claimant pays within that time the goods will be advertised for sale and sold at public auction or public sale in a commercially reasonable manner". It goes on to state that "any person claiming interest in the goods is entitled to bring a proceeding hereunder within 10 days of the service of this notice", and that the notice must be personally delivered to occupant, or sent registered, certified mail to the occupant.

  Once again as a "non-occupant the homeowner who had their possessions placed into these types of units, while having the "claim to interest" required, will NEVER receive such notice as they are not required by the law to that notice. Only the evicting party, Sheriff, Realtor, or other entity who DID sign as "Occupant" is entitled to that protection.

  I have been very rigorous in not only finding out where my personal belongings are stored, but to this date have been able to keep them from being auctioned. I am one of those homeowner's who are being directly harmed by not only NY Lien law, but Uncle Bob's Storage, Integrated Asset Services Western New York Contractors, Inc (WNY Contractors, Inc.) and undisclosed entities who are preventing me from reacquiring my personal property. I am going to use my paperwork and information as clear examples of the harms of those similarly situated. I have broken the situation into categories for easier reference:

## Condition of Personal Possessions and Stolen Property

When the personal possessions were removed from the property located at 8 Eltham Drive Amherst NY, we as homeowners were removed from the property first, and not allowed to witness the removal of the property. Mrs. Pillich was assured that the greatest care would be taken with the property, bubble wrapping etc., but only boxes were seen on the site prior to her leaving the property. She was also assured that an inventory of all items was being taken, and would be given to her at a later date to not only compare to what she knew was in the home, but to compare to items in the storage unit. To this date, that list has not been given to the us. In fact, we are expected to sign a disclaimer virtually absolving all parties from being responsible for any items that are found to be missing, destroyed, or damaged. This is an ***extremely important*** point if contention as this list is not only necessary but should be a right to persons who are evicted and have their personal property removed by others. This list is necessary for comparison so any items that are found to be missing and could be reported as stolen property. By forcing an evicted homeowner to sign a waiver would absolve all parties involved from ANY wrongdoings whether theft or damage. This forced waiver would also deny the homeowner any claims that they may make on any insurance coverage they may have.

## Insurance Coverage

**While being charged $9.00 a month for "Insurance", I have no idea of the terms** and conditions of that coverage I am assumed responsible for. As if I do not pay what **Uncle Bob's Self Storage is charging me the units will be auctioned. I am not covered by the policy as I am not considered the "Occupant". By my not being the "Occupant"**, and not knowing the contents of each unit, I am unable to get insurance that covers my personal possessions in the units. $9 x 6 units x 20 months of service means we were assessed and billed $1080 for coverage we can not use unless Sovran as Judgment Creditor over WNY (the vendor who signed for coverage) assigns it to us.

## Cost of Occupancy

At the time of placing my personal property into the units, a representative of Integrated Asset Services LLC and the Realtor known as WNY Contractors c/o Allen Shubbuck signed the Occupancy Agreement. That occupancy agreement set forth the terms and conditions of the cost of storage, the number of the units, and the size of the units my personal property were placed in. As you will see the billing is inconsistent **with apparent monthly increases.** (It is unclear as to the number of months for the first billing. Uncle Bob's has a "first month" free offer and I have calculated the first bill to include either 4 or 5 months accordingly)

Billing submitted with this letter

### "Rental Fee"
October- February 2013:
  6 units total $3372.00 4 months (1st month free) $129.88 per mo./per unit
    $3372.00 5 months    $103.90 per mo./per unit

  March 1, 2013-May 31, 2013      June 1, 2013 – July 31, 2013
  Unit S314 $161.67 mo. (min. $31.79 increase) $195.00 mo $33.34 increase
  Unit S315 $161.67 mo. (min. $31.79 increase) $195.00 mo $33.34 increase
  Unit S327 $201.67 mo (min. $71.79 increase) $235.00 mo $33.34 increase
  Unit S331 $191.66 mo. (min. $61.78 increase) $225.00 mo $33.34 increase
  Unit S332 $201.66 mo. (min. $71.79 increase) $235.00 mo $33.34 increase
  Unit S604 $145.67 mo (min $15.79 increase) $179.00 mo $33.34 increase

### "Late Fee"
October- February 2013:
  6 units total $570.00
    $95.00 per unit 4 months (1st month free) $3.96 per mo./per unit
    $95.00 per unit 5 months    $3.17 per mo./per unit

  March 1, 2013-May 31, 2013 (3 months)
    $ 95.00 each unit / $31.67 per month( min $27.71 increase)

### "Lien fee"
October- February 2013:
  6 units total $115.00
    4 months (1st month free) $4.79 per mo./per unit
    5 months    $3.83 per mo./per unit

March 1, 2013-May 31, 2013 (3 months)
$ 115.00 each unit / $38.33 per mo/ per unit ( min $33.54 increase)

### "Insurance fee"
October- February 2013:
6 units total  $45.00
4 months (1st month free) $1.87 per mo./per unit
5 months    $1.50 per mo./per unit

March 1, 2013-May 31, 2013 (3 months)
$ 9.00 each unit / $3.00 per mo/ per unit ( min $1.13 increase)

June 1, 2013-July 31, 2013 (3 months)
$ 9.00 each unit / $9.00 per mo/ per unit ( min $7.13 increase)

### "Applied Credits"
As this is undefined there can be no determination as to it's "exact" meaning. On the face of it there appears to be an unknown arrangement with WNY Contractors Inc. and /or Integrated Asset Services LLC to **which monies were advanced by Uncle Bob's Self Storage to either, or both, entities** which are now being recouped through their holding of evicted people's possessions.

As you can see there are HUGE differences in the billing. The monthly amount billed for the base rent keeps going up each month. I almost expect that the billing will keep jumping, possibly in the hopes that I will consider it no longer worth paying the bill for my possessions as the storage in total costs more than the items are worth. As there are expensive antiques, family heirlooms, pictures, and irreplaceable business and personal files, I don't see that day happening. But I can empathize with those who are in a worse financial state than myself. The first bill alone could have sunk them, and if the items had never made it to the unit? The items had been stole or sold? They would be "none the wiser". The residents of this State need protection NOW!

Up until end of May 2013, I have made all payments to Uncle Bob's Self Storage, although under duress, on the hope that my possessions ARE in the facility, and all items are present, although I know that some possessions were not taken from the home and placed into the storage facility, but left in the property. (The expensive draperies were seen still hanging in the windows after the eviction).

The fact that there is a "lien fee" is somewhat confusing. It is my understanding that according to the NY Lien Law the "owner" *may* charge for a lien and is entitled to reimbursement for that lien, but it eludes me as to how to this lien would have gotten

through a court of law. If this is true, then *some* legal proceeding that I am unaware of *has* occurred with my personal property, or Uncle Bob's is charging a fee for something to which they are not entitled. I paid $9044 under duress with all rights reserved and never got the inspection nor WNY's inventory manifest of what was taken. I want that money back and the legal fees I paid for representation against Sovran in both courts.

If a lien was gotten, have the items in the unit been sold, and Uncle Bob's Self Storage is still billing...knowing I will pay the bill to keep the property from going to auction, and knowing the possible "emptiness" of the units will not be discovered until I sign the required waivers?

We need IMMEDIATE HELP to not only keep a sale of our personal property from occurring; but to ensure we are not being billed for empty units, or units now filled with another evicted homeowner's items. The residents of our land ALL need to help to stop these practices of not only Uncle Bob's Self Storage, but Integrated Asset Services and their Affiliates, and WNY Property Contractors, Inc.. We need protections that only the U S Bankruptcy Court can help us achieve. We are the rightful owner's of personal property that in a sense has been seized, with no ability to know the conditions of arrangements for which this property is being held under, what laws apply, yet our property is held hostage until some sneaky action by Sovran allows there to be a Secret unadvertised Auction or the contents are rummaged through by employees of Sovran and their good buddies and sold off for cash and or drugs.

In essence, Sovran hired a very high powered law firm to secure for a non entity Sovran Self Storage Inc, dba Uncle Bobs Self Storage, a Default Judgment against WNY, the eviction specialist who stole our property on Dec. 5, 2013 for $12,000 plus their legal and administrative and collection costs. That should allow Sovran to go after WNY for all the money they are owed. WNY has substantial assets as does their owner Allan Shubbuck. The Pillichs demand a hearing to verify no debt is due Sovran for their billings against WNY since WNY is worth a great deal and Sovran has an indemnification agreement for all costs against WNY. Sovran has refused to show us they were paid in full by their Execution on Judgment.

In addition, Sovran purchased a Travelers( see Sovran Exhibit C) Errors and Omissions Policy to cover any claims by the Pillichs for damages and theft of property taken from our home. They refuse to give us a copy of the policy to file a claim.

In addition, Sovran billed WNY six Bader Insurance Renters policies for each unit for WNY and made us pay for them under DURESS. Sovran then executed against them for conversion to cover any claims. Those policies end up paying $2000 for each unit totaling $12,000 or more. Sovran refuses to give us a copy of the policy but took our money ! Sovran said those policies were to be assigned to Pillichs but, never were.

In addition, Sovran conducted several unadvertised auctions of rental units at their Sheridan Drive Tonawanda Store and granted access to their employees to rummage through our property and steal what they wanted. For this reason, we have been denied access to inventory and catalog what was taken from our home illegally in October 3rd through October 11, 2012.

In addition, Sovran did not SIGN a contract for those six units until Oct. 16, 2012, thus, our property was taken to WNY facilities and not directly to a bonded storage unit as the law required. So, WNY had ample time to rummage through our Crystal and fine China and silver and heirlooms and steal what they wanted.

Due to repeated denials to gain access to inspect our property, we opened a criminal investigation with law enforcement on May 5, 2014 and that process will take four weeks to conclude. We want to present the Judge with the results to prove bad acts by Sovran and WNY.

Here is what we ask for:

1. Inspection of all six units by our Insurance Adjusters and us for two weeks.
2. Return of our $9044 paid to Sovran under duress & all attorneys fees to prevent sale of property.
3. Assignment of the six Bader policies to us and a copy of the policy.
4. Give us a copy of the Travelers Insurance and any other Sovan Errors & Omissions Policies so we can make a claim for the damages & theft.
5. Correct the mis-billing or the actual six units occupied. Two units are wrong.
6. Access to Judgment Creditor claims against WNY & owner Al Shubbuck.
7. Maintain the Stay on the Storage units for the next ninety days.
8. Command Sovran to grant continuous access to units for ninety days
9. Pillichs will complete inspection & claims process in ninety days and vacate.
10. Pillichs want two violations of Stay prosecuted against Sovran.
11. Pillichs want the two motions brought today dismissed as defective.
12. Wait for Law Enforcement Report of Criminal Activity at Sovran Site.
13. Allow us Thirty days to secure an attorney to help us in this complicated matter.
14. Allow the monies received to be accounted for and Debtor be protected.
15. Whatever else is deemed just and proper in your court.

Sworn to this six day of May, I set my Seal below.

_Marsha Pillich_

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re

Marsha M. Pillich,

            Debtor.

Chapter 13

Case No. 1-14-10605-CLB

**SECOND AMENDED NOTICE OF MOTION FOR AN ORDER (I) DISMISSING
THIS CASE PURSUANT TO 11 U.S.C. §§ 109(G) AND 1307
OR (II) GRANTING RELIEF FROM THE AUTOMATIC
STAY PURSUANT TO 11 U.S.C. § 362(D)**

PLEASE TAKE NOTICE that upon the motion of Sovran Self Storage, Inc. and Sovran Acquisition Limited Partnership d/b/a Uncle Bob's Self Storage (collectively, "Sovran") dated April 11, 2014 ("Motion"), Sovran will move before the Honorable Carl L. Bucki, United States Bankruptcy Court for the Western District of New York, Olympic Towers, 300 Pearl Street, Suite 250, Buffalo, NY 14202 on May 6, 2014, at 10:00 a.m., or as soon thereafter as counsel can be heard, for an Order (i) dismissing this Chapter 13 case pursuant to 11 U.S.C. §§ 109(g) and 1307 or, in the alternative, (ii) granting relief from the automatic stay for cause pursuant to 11 U.S.C. § 362(d); (iii) granting Sovran injunctive relief with respect to future bankruptcy filings, and (iv) for such other and further relief as is appropriate.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the relief requested in the Motion must be provided to Phillips Lytle LLP, One Canalside, 125 Main Street, Buffalo, New York 14203, Attention: Angela Z. Miller, Esq., in accordance with the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court for the Western District of New York.

Dated: Buffalo, New York
       April 16, 2014

                                      PHILLIPS LYTLE LLP

                                      By /s/ Joshua P. Fleury
                                          Angela Z. Miller
                                          Joshua P. Fleury
                                      One Canalside
                                      125 Main Street
                                      Buffalo, New York 14203-2887
                                      Telephone No. (716) 847-8400

                                      Attorneys for Sovran Self Storage, Inc. d/b/a
                                      Uncle Bob's Self Storage

Doc #01-2767877.3

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

---

In re                                           Chapter 13

Marsha M. Pillich,                              Case No. 1-14-10605-CLB

              Debtor.

---

### NOTICE OF MOTION FOR AN ORDER (I) DISMISSING THIS CASE PURSUANT TO 11 U.S.C. §§ 109(G) AND 1307 OR (II) GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(D)

PLEASE TAKE NOTICE that upon the motion of Sovran Self Storage, Inc. and Sovran Acquisition Limited Partnership d/b/a Uncle Bob's Self Storage (collectively, "Sovran") dated April 11, 2014 ("Motion"), Sovran will move before the Honorable Carl L. Bucki, United States Bankruptcy Court for the Western District of New York, Olympic Towers, 300 Pearl Street, Suite 250, Buffalo, NY 14202 on April 21, 2014, at 11:30 p.m., or as soon thereafter as counsel can be heard, for an Order (i) dismissing this Chapter 13 case pursuant to 11 U.S.C. §§ 109(g) and 1307 or, in the alternative, (ii) granting relief from the automatic stay for cause pursuant to 11 U.S.C. § 362(d); (iii) granting Sovran injunctive relief with respect to future bankruptcy filings, and (iv) for such other and further relief as is appropriate.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the relief requested in the Motion must be provided to Phillips Lytle LLP, One Canalside, 125 Main Street, Buffalo, New York 14203, Attention: Angela Z. Miller, Esq., in accordance with the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court for the Western District of New York.

Dated: Buffalo, New York
       April 11, 2014

                                              PHILLIPS LYTLE LLP

                                              By  /s/ Joshua P. Fleury
                                                     Angela Z. Miller
                                                     Joshua P. Fleury
                                              One Canalside
                                              125 Main Street
                                              Buffalo, New York 14203-2887
                                              Telephone No. (716) 847-8400

                                              Attorneys for Sovran Self Storage, Inc. d/b/a
                                              Uncle Bob's Self Storage

Doc #01-2767877.1

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re                                                Chapter 13

Marsha M. Pillich,                                   Case No. 1-14-10605-CLB

                    Debtor.

## AMENDED NOTICE OF MOTION FOR AN ORDER (I) DISMISSING THIS CASE PURSUANT TO 11 U.S.C. §§ 109(G) AND 1307 OR (II) GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(D)

PLEASE TAKE NOTICE that upon the motion of Sovran Self Storage, Inc. and Sovran Acquisition Limited Partnership d/b/a Uncle Bob's Self Storage (collectively, "Sovran") dated April 11, 2014 ("Motion"), Sovran will move before the Honorable Carl L. Bucki, United States Bankruptcy Court for the Western District of New York, Olympic Towers, 300 Pearl Street, Suite 250, Buffalo, NY 14202 on April 21, 2014, at 11:30 a.m., or as soon thereafter as counsel can be heard, for an Order (i) dismissing this Chapter 13 case pursuant to 11 U.S.C. §§ 109(g) and 1307 or, in the alternative, (ii) granting relief from the automatic stay for cause pursuant to 11 U.S.C. § 362(d); (iii) granting Sovran injunctive relief with respect to future bankruptcy filings, and (iv) for such other and further relief as is appropriate.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the relief requested in the Motion must be provided to Phillips Lytle LLP, One Canalside, 125 Main Street, Buffalo, New York 14203, Attention: Angela Z. Miller, Esq., in accordance with the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court for the Western District of New York.

Dated: Buffalo, New York
       April 11, 2014

                                    PHILLIPS LYTLE LLP

                                    By  /s/ Joshua P. Fleury
                                        Angela Z. Miller
                                        Joshua P. Fleury
                                    One Canalside
                                    125 Main Street
                                    Buffalo, New York 14203-2887
                                    Telephone No. (716) 847-8400

                                    Attorneys for Sovran Self Storage, Inc. d/b/a
                                    Uncle Bob's Self Storage

Doc #01-2767877.2

Storage    Truck Rental    Moving Boxes    Vehicle Storage    Commercial Storage    My Account    Company    Get Stor-ganized    Find Us

For storage tips, social & more:

Find a location near you or call **800-242-1715**

Enter your City, State or Zip Code    Find Storage

## Company

Sovran Self Storage, Inc.
Careers
Contact Us
Directors & Management
Investor Relations
Third Party Management

## Directors & Management

### Officers and Directors

**Robert J. Attea**
Executive Chairman of the Board
Mr. Attea has been Director since 1995 and served as Chairman of the Board from 1995 to 2012. Prior to that he served as Chief Executive Officer from 1997 to 2012. From 1988 to 1995, Mr. Attea served as President and Chief Executive Officer of the Company's predecessor. From 1985 to 1988, he served as Director of Acquisitions and Vice President of Property Management.

**Kenneth F. Myszka**
President & Chief Operating Officer
Mr. Myszka has been President and Director since 1995. Mr. Myszka was the Chief Executive Officer of the Company until March 1997 at which time he became the Chief Operating Officer. From 1982 to 1995, Mr. Myszka served as Senior Vice President of the Company's predecessor.

**David L. Rogers**
Chief Executive Officer
Mr. Rogers previously served as the Company's Chief Financial Officer and Secretary from 1995 to February 2012. From 1988 to 1995, Mr. Rogers served as the Vice President of Finance of the Company's predecessor.

**Andrew J. Gregoire**
Chief Financial Officer
Mr. Gregoire is a CPA and previously served as the Company's Vice President of Finance from 1998 to February 2012. Prior to that Mr. Gregoire was a Senior Manager at Ernst & Young, where he had been employed for 9 years.

**Paul Powell**
Executive Vice President, Real Estate Investment
Mr. Powell previously served as the Company's Vice President of Development and Real Estate Management from 2005 until 2012. He joined the Company in 1997 and was named Regional President of Operations from 1998 - 2000 when he was promoted to Vice President of Management and Operations. Prior to joining Sovran, he worked in real estate management which included self storage for 13 years.

**Edward Killeen**
Executive Vice President, Real Estate Management (1997)
Mr. Killeen previously served as the Company's Vice President of Sales and Operations from 2005 until February 2012. He joined the company in 1997 as Regional Vice President of Operations and was named Vice President of Sales and Marketing in

### Corporate Management

Joan Brickell
Director of Audits (1984)

Kevin Driscoll
Vice President, Finance (2005)

Sandra Herberger
Vice President, Administration/Legal Compliance (1990)

Randy Hillman
Regional Vice President (2004)

Jennifer Kozub
Director of Human Resources (1999)

Andrew Kraft
Regional Vice President (2011)

Jim Kwitchoff
Regional Vice President (2013)

Christopher Laczi
Director of Marketing (2000)

Darren Laratonda
Vice President, Customer Care / Team Training & Development (2009)

Jeffrey Myszka
Regional Vice President (1998)

Jeffrey O'Donnell
Director of Information Technologies (2000)

David Paolini
Vice President, Revenue Management (1983)

Diane Piegza
Vice President, Corporate Communications (1990)

John Rogers
Vice President, Business Development (1993)

Michael Rogers
Vice President, Real Estate/Asset Management (1995)

Christopher Runckel
Regional Vice President (2011)

Diane Steger
Accounting Manager (1995)

**Finances**

Sovran Self Storage, Inc. is on the New York Stock Exchange under the symbol NYSE: SSS (http://www.nyse.com/about/listed/quickquote.html?ticker=sss).[1] It went public in June 1995, when Sovran owned 74 storage facilities. The company sold 5.92 million shares to the public at the time, raising about $136 million within the week. About $70 million of that amount was used to repay debt and the rest was mainly spent to purchase additional facilities. The public owns approximately 86.5% of Sovran's million outstanding shares.[13] The value of 156% million in 1995 had grown to $660 enterprise value in June 2000.[8] The company's market value in 2004 was $504 million.[12] Their enterprise value is estimated at $1.56 billion (USD) as of March 21, 2011. Their market capitalization is estimated at 1.07 billion (USD) also as of March 2011. As of December 31, 2010, their operating cash flow is 73.67 million. Their revenue (ttm) is 183.10 million, their gross profit is 121.16 million. Their EBITDA ("earning before interest, taxes, depreciation and amortization") is 99.54 million.[12] From 2009 to 2010, revenues for the 344 stores owned entirely by the company increased by 2.6%.[2]

In 2010, the formation of Uncle Bob's Management was announced, which offers management and systems expertise to private owners and third-party operators outside of their main ventures. Companies and facilities under contract with Uncle Bob's Management are branded by Uncle Bob's name, while retaining private ownership.[9]

**In the community**

The company has participated in the U.S. Marine Corps Reserve program Toys for Tots and has opened up several of their facilities to become drop-off points for donations.[14] In November 2010, the company hosted a fund-raising barbecue for the program in its three Charlotte, North Carolina sites.[15] In December 2010, Uncle Bob's partnered with the American Hockey League's Syracuse Crunch in a "Name Your Own Price" ticket promotion.[16]

In January 2011, they sponsored a month-long coat drive in Lafayette, Louisiana for local children. The drive was in support of Coats for Kids and culminated in a social event and a live remote with KMDL Radio (93.7).[17]

Uncle Bob's also assisted the National Association of Letter Carriers (NALC) in their Stamp Out Hunger campaign, particularly the massive food drive on May 14, 2011.[18][19]

The company has banned the use of glue traps at all its facilities.[20]

# Key People

- **Robert J. Attea** - Chairman, Chief Executive Officer
- **Kenneth F. Myszka** - President, Chief Operating Officer[2]
- **David L. Rogers** - Secretary, Chief Financial Officer[12]
- **Anthony P. Gammie** - Director
- **Charles E. Lannon** - Director
- **James R. Boldt** - Director
- *Stephen R. Rusmisel'* - Director
- **John E. Burns** - Director[12]

# References

1. ^ a b c d e f g "About Sovran Self Storage, Inc., professional management of Uncle Bob's Self Storage" (http://www.uncleBob's.com/company/). Uncle Bob's Self Storage. Retrieved 2011-04-18.
2. ^ a b c d "Investment Releases" (http://www.uncleBob's.com/company/investment-press-releases.cfm). Uncle Bob's Self Storage. February 23, 2011. Retrieved 2011-04-18.
3. ^ a b c d "Listed Securities: Sovran Self Storage Inc." (http://secfilings.nyse.com/files.php?symbol=sss&page=1). NYSE. March 2011. Retrieved 2011-06-06.
4. ^ a b c d "Sovran Self Storage Inc. (SSS)" (http://finance.yahoo.com/q/pr?s=SSS). Yahoo! Finance. March 2011. Retrieved 2011-04-18.
5. ^ a b c d e f "Sovran's Uncle Bob's Chain Celebrates 25 Years In" (http://www.insideselfstorage.com/news/2010/07/sovran-s-uncle-bob-s-chain-celebrates-25-years-in.aspx). Inside Self Storage. July 1, 2010. Retrieved 2011-04-18.
6. ^ a b c d "Storage Facility Locations" (http://www.uncleBob's.com/storage-units/find-a-storage-facility.cfm). Uncle Bob's Self Storage. Retrieved 2011-04-18.
7. ^ Martin, Susan (January 27, 2002). "Office Envy". *Buffalo News*.
8. ^ a b c Linstedt, Sharon (June 1, 2000). "New Headquarters Bolsters Sovran's Ties to Region". *The Buffalo News*.
9. ^ a b c O'Neill, Melissa (December 16, 2010). "Uncle Bob's Self Storage Expands to Professional Management" (http://businessnewsexpress.com/uncle-Bob's-self-storage-expands-to-professional-management/8774419/). *Business News Express*. Retrieved 2011-04-18.
10. ^ Robinson, David (May 22, 2007). "Sovran looks for good growth in Buffalo-area storage market". *Buffalo News*.
11. ^ Robinson, David (March 31, 2007). "Sovran Self Storage acquires Benderson's Storage Pro units". *The Buffalo News*.
12. ^ a b c d e Coffey, Brendan (April 30, 2004). "Unlocking Value in Self Storage" (http://archive.is/SxDy8). *Forbes*. Archived from the original (http://www.forbes.com/2004/04/30/cz_bc_0430sf.html) on 2013-01-23. Retrieved 2011-04-18.
13. ^ Robinson, David (June 22, 1995). "Sovran's Stock Sale Raises $136 Million". *Buffalo News*.
14. ^ "Toys for Tots" (http://www.uncleBob's.com/toys-for-tots/). Uncle Bob's Self Storage. Retrieved 2011-04-18.